# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| MELISSA BUNCH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:15CV00047 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| HON. FLORENCE A. POWELL, ET AL., | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Richard F. Hawkins, The Hawkins Law Firm, PC, Richmond, Virginia, for Plaintiff; E. Lewis Kincer, Jr., G. William Norris, Jr., and Katie DeCoster, Assistant Attorneys General of Virginia, Richmond and Abingdon, Virginia, for Defendants.*

In this action under 42 U.S.C. § 1983, the plaintiff, a former state court deputy clerk, claims that she was fired in violation of the Pregnancy Discrimination Act, the Family Medical Leave Act, and substantive due process under the Fifth and Fourteenth Amendments. She has sued the court's chief judge, the court itself, and the state.

The defendants have moved to dismiss, which motion has been fully briefed and is ripe for decision. For the following reasons, I find the claims to be adequately pleaded and the motion will thus be denied.

I.

The Complaint[1] alleges the following facts, which I am bound at this point in the case to accept as true.

On March 1, 1994, the plaintiff, Melissa Bunch, began employment as a deputy clerk for the Smyth County, Virginia, Juvenile and Domestic Relations Court (the "J&DR Court"). In 2009, she married a deputy sheriff of the Smyth County Sheriff's Office, who regularly appears before the J&DR Court.

In conjunction with his position as a deputy sheriff, the plaintiff's husband regularly prepares two types of formal documents through the J&DR Court — petitions and summonses. Petitions charge juveniles with non-traffic related criminal conduct, while summonses charge juveniles with traffic related offenses. The plaintiff's Complaint explains that the clerk's office processes petitions by preparing a cover page that will accompany each petition. The cover page is signed and stamped by either the clerk of the court or a deputy clerk prior to the service of the petition. Accordingly, these cover pages contain both the name of the clerk who processed the petition and the name of the law enforcement officer

---

[1] The plaintiff was allowed to file a First Amended Complaint in response to an earlier Motion to Dismiss. The First Amended Complaint removed claims against the Office of the Executive Secretary of the Supreme Court of Virginia and against the Supreme Court of Virginia. Thereafter, a second motion to dismiss was filed by the remaining defendants. For convenience, the First Amended Complaint will be referred to as the Complaint and the Motion to Dismiss Plaintiff's Amended Complaint will be referred to as the Motion to Dismiss.

-2-

who prepared the petition. The plaintiff contrasts this procedure for petitions with the one used to process summonses, and explains that the "processing of traffic summonses occurs after-the-fact and is essentially a ministerial matter that involves entering the relevant docket information related to the summons." (Am. Comp. ¶ 15, ECF No. 12.)

After her marriage, the plaintiff stopped processing her husband's petitions in order to avoid the appearance of impropriety. The plaintiff's Complaint references at least one occasion where Chief Judge Florence A. Powell, the plaintiff's immediate supervisor, reiterated that the plaintiff was not allowed to process her husband's petitions. Nonetheless, the plaintiff continued to process her husband's summonses, which she claims was appropriate. In support, the plaintiff states that other deputy clerks processed their spouse's summonses; she also says that she was never expressly told not to process her husband's summonses.

The plaintiff became pregnant in 2012, and underwent an emergency C-section on February 27, 2013. As a result, the plaintiff was on either FMLA or short-term disability leave from the time of that C-section until June 4, 2013. The plaintiff says that during her period of leave she regularly advised the J&DR Court of when she planned to return to work.

Sometime in August, 2013, Judge Powell learned that the plaintiff had processed two traffic summonses that were issued by her husband. On September

3, 2013, the plaintiff attended a meeting with Judge Powell, another judge of the J&DR Court, and the clerk of the J&DR Court. During that meeting, Judge Powell informed the plaintiff that her employment was to be terminated. The plaintiff alleges that Judge Powell "falsely told [her] that she had failed to follow her instructions regarding her husband's court paperwork." (Am. Compl. ¶ 29, ECF No. 12.) The plaintiff also alleges that Judge Powell said the plaintiff was being terminated because she had failed to "check in" during her FMLA and disability leave, had not notified the clerk as to when she would return from leave, and had missed necessary training while on leave.

Judge Powell ultimately gave the plaintiff the option to either submit a letter of resignation or be terminated immediately. The plaintiff subsequently submitted a letter of resignation, which became effective as of September 17, 2013.

II.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). In deciding whether a complaint will survive a Rule 12(b)(6) motion to dismiss, the court evaluates it and any documents attached or incorporated by reference. *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007). In ruling, the court must regard as true all of the factual allegations contained in the complaint, *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and must view those facts

in the light most favorable to the plaintiff. *Christopher v. Harbury,* 536 U.S. 403, 406 (2002).

Regarding the standard for employment discrimination claims, the Fourth Circuit has specifically held that, in order to survive a motion to dismiss, "a plaintiff is not required to plead facts that constitute a prima facie case." *Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510–15 (2002)).[2] Nevertheless, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Coleman*, 626 F.3d at 190 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a complaint need not contain detailed factual allegations, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

---

[2] There has been dispute over the continued viability of *Swierkiewicz* in the wake of *Twombly* and *Iqbal*. Several courts, including the Fourth Circuit, have noted that the Court in *Twombly* effectively overruled *Swierkiewicz* to the extent that it relied on the standard for dismissal set forth in *Conley v. Gibson,* 355 U.S. 41 (1957). *See, e.g., Francis v. Giacomelli,* 588 F.3d 186, 192 n.1 (4th Cir. 2009) (noting that *Conley* standard quoted in *Swierkiewicz* was "explicitly overruled" in *Twombly* ); *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009) (stating that *Swierkiewicz* was "specifically repudiated by both *Twombly* and *Iqbal* . . . at least insofar as it concerns pleading requirements and relies on *Conley*.") However, the Fourth Circuit has continued to adhere to *Swierkiewicz's* central holding rejecting heightened pleading standards in discrimination cases. *Coleman*, 626 F.3d at 189.

III.

The defendants challenge all of the causes of action levied against them in the plaintiff's Complaint, and argue that each of those causes of action should be dismissed for the failure to state a claim upon which relief can be granted.[3] Accordingly, each of the plaintiff's causes of action will be analyzed in turn.

A.   Pregnancy Discrimination.

"The Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 684 (1983); *see also* 42 U.S.C. § 2000e(k). "A claim of discrimination on the basis of pregnancy must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII." *DeJarnette v. Corning Inc.,* 133 F.3d 293, 297 (4th Cir. 1998) (quoting *Boyd v. Harding Academy of Memphis, Inc.,* 88 F.3d 410, 413 (6th Cir. 1996)).

Here, the alleged discrimination is the termination of the plaintiff's employment, so the plaintiff must at least establish that her pregnancy was a factor

---

[3] While the defendants' Motion to Dismiss summarily claims that this court lacks subject-matter jurisdiction, that motion does not provide any rationale as to why this court is without such jurisdiction. The Complaint shows that all three of the plaintiff's claims derive from alleged violations of federal law. As such, this court has subject-matter jurisdiction in the case. *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808, (1986).

that motivated the defendants' decision to terminate her.  42 U.S.C. § 2000e-2(m).  She can do this either by producing evidence which directly shows that she was terminated because of her pregnancy, or by providing enough circumstantial evidence to satisfy the *McDonnell Douglas* burden-shifting framework.  *See Jordan v. Radiology Imaging Assocs.*, 577 F. Supp. 2d 771, 782 (D. Md. 2008) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)).

While the plaintiff will ultimately bear the burden of proving her discrimination claim, the plaintiff must only provide, at this point, enough facts to create a reasonable inference that she will later be able to meet that burden.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plaintiff claims that she was fired, at least in part, because she took leave in connection with her pregnancy, and in doing so was wrongly accused of having violated the "protocol" of the J&DR Court.  She supports her allegation with direct evidence of what Judge Powell said during the meeting in which her employment was terminated.  This alleged evidence is sufficient to nudge the plaintiff's claim "across the line from conceivable to plausible."  *Twombly,* 550 U.S. at 570.  While the defendants argue that the plaintiff was actually terminated because she improperly processed her husband's summonses, the plaintiff has set forth enough facts to create a reasonable inference that her pregnancy leave was also a factor.   The defendants' request to dismiss Count I is therefore denied.

B.    Family Medical Leave Act.

The FMLA prohibits employers from retaliating against employees for exercising their FMLA rights. *See Dotson v. Pfizer, Inc.,* 558 F.3d 284, 294 (4th Cir. 2009). Although the FMLA does not contain an explicit prohibition against retaliation, the FMLA regulations state that the "prohibition against 'interference' prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). Specifically, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Id.* To succeed on an FMLA retaliation claim, a plaintiff must prove: (1) that she engaged in protected activity, (2) that the employer took adverse action against her, and (3) that the adverse action was causally connected to the plaintiff's protected activity.[4] *Yashenko v. Harrah's NC Casino Co.,* 446 F.3d 541, 551 (4th Cir. 2006).

In this case, it is undisputed that the plaintiff took FMLA leave and was fired approximately three months after returning from her leave. By alleging that Judge Powell explicitly referenced the plaintiff's FMLA leave as a reason for the

---

[4] The defendants correctly note there is a distinction between FMLA interference claims and FMLA retaliation claims. *See Dotson*, 558 F.3d at 292. The parties agree that the defendants did not interfere with the plaintiff's ability to take FMLA leave, and that Count II is purely a retaliation claim.

plaintiff's termination, the plaintiff has stated a plausible basis upon which to connect her termination to her FMLA leave. Of course, the plaintiff does not appear to allege that Judge Powell justified the plaintiff's termination by the mere fact that the plaintiff took leave. Rather, Judge Powell supposedly accused the plaintiff of failing to "check in" while on leave, failing to notify the Clerk as to when she would return from leave, and failing to follow the J&DR Court's "protocol," which caused her to miss necessary training. While there is a dispute between the parties as to whether these statements actually create a casual connection between the plaintiff's FMLA leave and her termination, such a dispute should not be decided at this stage of the case. Therefore, the defendants' request to dismiss Count II is denied.

IV. Due Process Violations.

Lastly, the plaintiff alleges that the defendants violated her substantive due process rights, as guaranteed by the Fifth and Fourteenth Amendments to the Constitution, by publicizing the false reasons they used to justify her termination. Although the plaintiff has no protected "property" interest in her employment with the J&DR Court, a public employer cannot deprive an employee of her "freedom to take advantage of other employment opportunities." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 573 (1972); *see also Sciolino v. City of Newport News, Va.,* 480 F.3d 642, 645 (4th Cir. 2007). "For this reason, a Fourteenth

Amendment 'liberty interest is implicated by public announcement of reasons for an employee's discharge.'" *Id.* at 645-46 (quoting *Johnson v. Morris,* 903 F.2d 996, 999 (4th Cir.1990)). In order for the plaintiff to successfully show that the J&DR Court interfered with the plaintiff's liberty interests, she must show that Judge Powell made statements that (1) placed a stigma on her reputation; (2) were made public by Judge Powell; (3) were made in conjunction with her termination; and (4) were false. *Id*. at 646; *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172 n.5 (4th Cir. 1988).

The plaintiff alleges that her liberty interests were violated because Judge Powell "falsely stat[ed], in conjunction with Bunch's termination, that Bunch had failed to follow proper protocol as to the summons, had failed to follow her direct instructions with respect to summons, had violated the Rules of Conduct for Judicial System Employees, and had failed to stay in touch with and notify the Clerk's office as to her leave and her return to work." (Am. Comp. ¶ 44, ECF No. 12.) The plaintiff goes on to state that her reputation and ability to find work have been damaged as a result of these statements. The plaintiff says that these false statements were made public when her state judicial personnel file, which contained the statements, was publically shared among state judicial entities to which the plaintiff applied for employment.

The defendants challenge Count III because paragraphs 46-48 of the Complaint, which discuss the extent to which the alleged statements from Powell were made public, are based largely on "information and belief." (Am. Comp. ¶¶ 46-48, ECF No. 12.) They further argue that even if the statements that are based on information and belief are accepted, they do not provide an adequate basis for believing that the false statements were made public. On the second point, the defendants cite to *Sciolino* to stand for the proposition that the plaintiff must do more than argue that her personnel file "may" have been made available to a prospective employer. *Sciolino*, 480 F.3d at 649-50.

"Pleading 'upon information and belief' is appropriate when the factual basis supporting a pleading is only available to the defendant . . ." or "where the belief is based on factual information that makes the inference of culpability plausible. . . ." *McClain & Co. v. Carucci*, No. 3:10-CV-00065, 2011 WL 1706810, at *4 (W.D. Va. May 4, 2011). Here, the plaintiff's allegations that are made "upon information and belief" fall somewhat into both of the categories articulated in *McClain*. Whether the plaintiff's personnel file was shared would generally only be known by the defendants and the employers who allegedly received that file. Nonetheless, the plaintiff's Complaint articulates specific facts which tend to support her belief that information related to her firing has been made available to the public. The Complaint identifies certain employers that the

-11-

plaintiff applied to who likely had access to her personnel file by virtue of being Virginia state entities. If the allegations levied against the plaintiff by Judge Powell were false, then the fact that those employers likely had access to the plaintiff's personnel file makes her due process claim a plausible one.

The defendants also argue that the statements supposedly made by Judge Powell are not the stigmatizing kind of statements that could violate the plaintiff's liberty interests. To be sure, in order for a liberty interest to have been implicated, the information disseminated by Powell must degrade the plaintiff's "good name, reputation, honor, or integrity. . . ." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. at 573 (citations omitted). In assessing liberty interest claims, the Fourth Circuit has "distinguished statements that imply such serious character defects from statements that simply allege 'incompetence.'" *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 308 (4th Cir. 2006). The statements relied on by the plaintiff create a close question, but given the stage of these proceedings, the supposed statements that the plaintiff disobeyed the direct orders of Judge Powell and violated the Judicial Code of Conduct provide a sufficient basis for the plaintiff to proceed on Count III.

The defendants also argue that the plaintiff was not actually terminated, but was instead given the option to resign, which she took. As the Fourth Circuit explained in *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d at 173, the

primary question is whether the plaintiff's resignation was voluntary. Answering such a question requires a factual inquiry into the circumstances surrounding the plaintiff's resignation and the extent to which, if at all, the defendants forced the plaintiff to resign. *See id.* The plaintiff argues that her resignation was not voluntary under the "duress/coercion" theory identified in *Stone*. *Id*. at 174. That theory requires an assessment of the total circumstances surrounding the plaintiff's resignation, including the weighing of factors such as "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation." *Id*. Such a detailed weighing of factual elements is not appropriate at this stage of the litigation. The plaintiff has pleaded a series of facts which provide a reasonable inference that her resignation was not voluntary, and has therefore met the burden required at the motion to dismiss stage. For these reasons, the defendants' request to dismiss Count III is denied.

V.

Of course, I cannot predict at this point whether the plaintiff will be able to prove her claims at trial, or even at the summary judgment stage of the case. Nevertheless, I find that she should be given an opportunity to proceed beyond her

initial pleading. Accordingly, for the foregoing reasons, it is **ORDERED** that Defendants' Motion to Dismiss (ECF No. 15) is DENIED.

                                      ENTER: December 17, 2015

                                        /s/ James P. Jones
                                        United States District Judge